### RICHARD H. VOSE *versus* BENJAMIN P. MANLY.

In an action by the Judge Advocate to recover a fine imposed by a Court Martial, the plaintiff's right to recover in such capacity is admitted by the plea of the general issue — if denied, the want of authority should be taken advantage of by plea in abatement.

The original record of a Court Martial is admissible wherever a certified copy would by St. 1837, c. 276, § 10, be good evidence.

It is no defence to a suit brought to recover a fine imposed by a Court Martial for official neglect, to show that the defendant had never in fact received his commission, nor been qualified, nor acted under it. Having accepted the office, it was his own neglect if he did not avail himself of his commission.

THIS was an action of debt brought by the plaintiff as Judge Advocate to recover a fine imposed by a Court Martial. The general issue was pleaded, and a brief statement filed, denying that the Court was duly constituted or had jurisdiction.

On the trial of this cause, before WESTON C. J. the plaintiff introduced a militia order verified by Francis Davis, aid-de-camp and orderly officer; the original judgment signed by the hand of the president, and a certified copy from the Adjutant-General's office.

Dudley P. Bailey, a clerk in the Adjutant-General's office, testified that the original record which he brought into Court from the office was sent to that office by Maj. Gen. White, in Sept. 1838, in a letter.

The defendant offered to prove that in Sept. 1837, Col. Nathan Fowler brought to Waterville a captain's commission for him — that Fowler said he had one but did not show it — that Fowler went into the store of the defendant while he was engaged in another part of the store, laid the commission on the counter, and while it lay there, without having been seen by the defendant, one Getchel took it up and carried it away, and that it never came into the hands of the defendant, who was never qualified to act and never did act as captain. Upon the above evidence the defendant was defaulted, with the agreement, that if the evidence offered was admissible, and afforded matter of defence, the default is to be taken off and the action stand for trial, otherwise the default to remain.

*Wells*, for the defendant. The Court had no jurisdiction — By the constitution the defendant had a right to a trial by jury. Const. of Maine, Art. 1, § 20; 4 Bl. Com. 5; 1 Bl. Com. 413; *Brooks* v. *Daniels*, 22 Pick. 498. A Court Martial being a court of limited jurisdiction, the plaintiff must show that fact. Nothing will be intended in its favor. *Brooks* v. *Adams*, 11 Pick. 441; *Brooks* v. *Davis*, 17 Pick. 148; *Brooks* v. *Graham*, 11 Pick. 445; *Winn* v. *Wethers*, 3 Cranch, 333; *Mills* v. *Martin*, 19 Johns. 7; *Vose* v. *Howard*, 13 Maine R. 268. The judgment is to be certified to the Major-General. St. 1837, c. 276, § 13. The Adjutant-General's office is not the place of deposit. St. 1837, c. 276, § 10. There is no penalty for neglecting or refusing to take a commission.

*Vose, pro se,* referred the Court to St. 1837, c. 276, § 10, 39; *Brooks* v. *Daniels*, 22 Pick. 498; *Green* v. *Gill*, 8 Mass. R. 111; *Commonwealth* v. *Cutter*, 8 Mass. R. 279; *Howard* v. *Folger*, 15 Maine R. 450.

The opinion of the Court was delivered by

EMERY J. — If the law, by virtue of which the suit is brought, be unconstitutional, the action cannot be sustained, and it would be unnecessary to proceed further in discussing other objections raised by the defendant's counsel. Were the question entirely new, there might be a propriety in more minutely examining the subject. It has, however, been already under our consideration, and according to our conviction we have previously decided, in the case, *Rawson* v. *Brown*, 18 Maine R. 216, in favor of the constitutionality of the provision. A proceeding, similar to that upon which this suit is founded, was held to be "a trial by martial law, being before a Court Martial, and for a military offence. Courts Martial are never attended by a jury, and they had properly cognizance of military offences, before the formation of the constitution."

Our statute, c. 276, § 10, passed March 23, 1837, provides, "That a copy of the record of any Court Martial, certified by the President of such Court, together with a duly authenticated copy of the order convening said Court, shall be conclusive

and sufficient evidence to sustain in any court, any action commenced for the recovery of any fine and costs, or part costs, or either, agreeably to the provisions of an act to which this is additional." If the copy would be good evidence, we cannot understand why the original should not be equally efficient; and that was brought into Court.

At first view, it would appear reasonable that the offered proof, " that a captain's commission was brought by Col. Nathan Fowler to Waterville for said Manley, into his store, and while Manley was engaged in another part of the store, laid on the counter, and while it laid there, without being seen by Manley, one Getchell took up the commission and carried it away, and that it never came to the hands of Manley, who was never qualified to act, and never did act as captain," should have been received. Because it would seem that if the man did not choose to serve his country in the character of a militia captain, it would be cruel to fine him for declining office and not taking the commission.

However improbable it may be, that *a person actually within a country store,* of which he was the occupant, though engaged just at that time in another part of the store, *should not well understand that so important a document of his promotion and honor, belonging to him, was within his control, brought there by the colonel, and laid upon the defendant's counter;* and astounding as it may be, that a man whose name was known, should have the *audacity* to take away from the counter such a document, *without the express or tacit approbation of the true owner,* no exertion being made by him to recover it, yet we must consider that the defendant could show what he offered to prove. The first impression in favor of introducing the proffered evidence, will be much weakened upon further examination of the militia law. It must be recollected that by the seventh section of the statute of March 8, 1834, c. 121, the captains and subalterns of companies are to be chosen by the written votes of the members of their respective companies. By the tenth section, all commissions shall be transmitted to the Major-Generals, and be regu-

larly passed down to the persons entitled to receive them ; and every person *who shall be elected to any office as aforesaid, and shall not within one hour after he shall have been notified of his election by the officer who presided thereat,* excepting in case of a Major-General, who is allowed 30 days, *signify his acceptance thereof, shall be considered as declining to serve,* and orders shall be forthwith issued for a new choice. And where an *officer shall by any casualty lose his commission, upon his making an affidavit thereof before any justice of the peace for the county in which he resides, and on filing such affidavit in the office of the Adjutant General, he shall be entitled to receive a new commission of the same tenor and date as the one so lost as aforesaid.* We must therefore consider that *Capt. Manley accepted the office of captain,* to which he was elected. And if he did not avail himself of his commission, it was his own fault. *Howard* v. *Folger,* 15 Maine R. 447.

By article 8th, no resignation of any officer shall be approved, if offered between the 1st of May and the 1st of November, unless the reasons be very urgent. Nor by art. 9, shall he be discharged, except by the *Commander-in-chief,* on request of the officer, in writing, or by actual removal of residence out of the bounds of his command, and to such a distance that his Major-General shall think it inconvenient for him to discharge the duties of his office, or by twelve months' absence without leave of his commanding officer of his division, or by the corps to which he belongs being disbanded by law. And by art. 10, *no officer shall consider himself as exempted from the duties of his station,* except when under arrest, until he shall have been discharged by one of the methods or causes pointed out in the preceding article, or shall have received a certificate of his discharge from the Commander-in-chief.

Upon this review of the law in relation to the militia, it appears to us that the defendant could not, by the introduction of the proposed evidence, be in a better situation than if it were excluded, as it would have been entirely unavailing to

exonerate him from responsibility. The conclusive character of the sentence would not be impeached in this way.

The general issue is pleaded here, which admits the right of the plaintiff to sue. If his authority in this respect had intended to be resisted, it should have been done by plea in abatement.

*The default must therefore remain, and judgment be rendered thereon in favor of the plaintiff.*